UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA          :

                vs.          :          CRIMINAL NO.  3:03CR242(SRU)

JOSE RIVERA          :          June 15, 2005

## DEFENDANT'S MEMORANDUM IN AID OF RE-SENTENCING

### Introduction

Sometimes the law, sensibly written,  makes less than good sense when interpreted.

On May 28, 2004, this Court  sentenced Jose Rivera, upon his conviction for being a felon in possession of a firearm, to imprisonment for ten years.  In doing so, the Court carefully considered Mr. Rivera's record, with particular attention to his conviction for "escape," and concluded that Mr. Rivera was not  an armed career criminal because his form of escape was not inherently a crime of violence. While the  legal issue required a categorical analysis of the escape offense to determine if it involved conduct which presented a serious potential risk of injury to another person, there was no dispute that the actual escape, i.e., failure to return from furlough, had been entirely nonviolent.  As to a  serious potential for risk of injury, this Court noted that there is no "hot pursuit" in a failure to return from furlough and the risk of injury is no greater than would be present for any offense. Transcript of 5/28/04 at 16, 21 (Tr. at ___).  Despite the thoughtfulness of the Court's analysis, and the persuasiveness of the distinctions drawn between this case and precedent treating other forms of  "escape" as crimes of violence, the government appealed and the Second Circuit  reversed.  In a summary order, the Court of Appeals relied, without re-analysis, upon precedent establishing the rule that all escapes, without consideration of subcategory, present the requisite serious potential for injury to make them crimes of violence.

When it sentenced Mr. Rivera to ten years imprisonment, the Court  stated that if Mr. Rivera was a career offender due to his escape being deemed a violent offense, then the Court "would have in your case made findings  to support the granting of a downward departure."  Tr. at 33.  Upon the entire

- 2 -

record, Mr. Rivera urges this Court to sentence him to imprisonment for a term of fifteen years, and, for the reasons stated below, he objects to being sentenced pursuant to 18 U.S.C. § 924(e).

## Discussion

**A.    Sentencing the Defendant as a Career Offender Violates the Fifth and Sixth Amendments.**

In a series of recent cases, the Supreme Court has recognized that "the Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the state, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence." See Shepard v. United States, 125 S. Ct. 1254, 1262 (2005). Although the Supreme Court has excluded the fact of prior convictions from this constitutional guarantee, see Apprendi v.New Jersey, 530 U.S. 466 (2000), that exception from the broader rule has been criticized as inconsistent with fundamental constitutional rights. See, Shepard v. United States, 125 S. Ct. at 1263 (Thomas, J., concurring). To date, the prior conviction exception stands as binding precedent, and defendant raises the objection to preserve his constitutional claim because the indictment in this case did not allege three prior violent felony convictions, the defendant did not admit to three prior violent felony convictions and the jury did not find three prior violent felony convictions.

**B.    A Sentence of 15 Years Imprisonment, Required by ACCA, is Actually Greater Than Needed to Achieve the Statutory Purposes of Sentencing.**

The Supreme Court's recent decision in United States v. Booker, ___ U.S. ___, 125 S. Ct. 738 (2005), put the "guide" back into the Sentencing Guidelines. While Booker requires this Court to consider the Guidelines in "tailoring" an appropriate sentence in a given case, the Court is no longer instructed that it "shall" impose a sentence within the Guideline range. Instead, the Guidelines are now one of several factors the Court must "consider" in determining a sentence. Even before the recent decision in Booker, sentencing courts were expected to impose a sentence "sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2) of [18 U.S.C. § 3553(a)]". These purposes are:

(2) the need for the sentence imposed -

(A) to reflect the seriousness of the offense, to promote

- 3 -

respect for the law, and to provide just punishment for
the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the
defendant; and

(D) to provide the defendant with needed educational or
vocational training, medical care, or other correctional
treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2). This focus on the individual defendant was often undercut, however, by the

mandate generally to "impose a sentence of the kind, and within the range referred to in [the

Guidelines]." 18 U.S.C. § 3553(b).

In United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the Second Circuit reviewed Booker

and explained how courts should now approach sentencing and the determination of a fair and just

sentence. The Crosby Court noted that "[t]he Supreme Court's decision in Booker/Fanfan significantly

altered the sentencing regime that has existed since the Guidelines became effective on November 1,

1987[,]" id. at 108, but it then stated that "[a]lthough the most significant aspect of the [Booker/Fanfan]

Remedy Opinion is the excision of subsection 3553(b)(1), with the result that the use of the Guidelines

to select a sentence is no longer mandatory, a critically important aspect of Booker/Fanfan is the

preservation of the entirety of the SRA with the exception of only the two severed provisions." Id. at

110(emphasis added).

Under 18 U.S.C. § 3553(a), the sentencing judge must consider enumerated factors, including

the Guidelines. Id. at 110. The Crosby Court advised that the statutory duty to "consider" the

Guidelines means that "a sentencing judge will normally have to determine the applicable Guidelines

range[,]" and "[t]he applicable Guidelines range is normally to be determined in the same manner as

before Booker/Fanfan." Id. at 111. While the sentencing judge must determine the Guidelines range in

order to "consider" it, Crosby expressly declined to "determine what degree of consideration is required,

or, to put it another way, what weight the sentencing judge should normally give to the applicable

Guidelines range." Id. at 113. What the sentencing court must do, then, is "consider the Guidelines and

- 4 -

all of the other factors listed in section 3553(a)."  <u>Id.</u> (emphasis added).  Ultimately, after considering the relevant factors, and given the fundamental point that "the Guidelines are no longer mandatory[,]" the sentencing judge must decide "whether (i) to impose the sentence that would have been imposed under the Guidelines, <u>i.e.</u>, a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence."  <u>Id.</u>

Nothing in 18 U.S.C. § 3553(a) or in <u>Booker</u> or <u>Crosby</u> requires this Court to give the Guidelines primacy over the other factors listed in section 3553(a).  Indeed, doing so would imbue the Guidelines with a presumptive correctness that would effectively make them "mandatory," in violation of the holding of <u>Booker</u>.  As one district court has already noted, "<u>Booker</u> <u>is not</u> an invitation to do business as usual."  <u>United States v. Ranum</u>, 353 F.Supp. 2d 984, 987 (E.D.Wis. 2005) (emphasis added).  In fact, Justice Scalia's dissent in <u>Booker</u> succinctly clarifies a sentencing court's liberty in arriving at an appropriate sentence:  "logic compels the conclusion that the sentencing judge, after considering the recited factors [in section 3553(a)] (including the Guidelines), has full discretion, as full as what [she] possessed before the [Guidelines were] passed, to sentence anywhere within the statutory range."  125 S.Ct at 791.  (Scalia, J., dissenting).

The law is well settled that a sentencing court may, in appropriate cases, depart from the career offender category where mitigating factors make the case atypical.  In <u>United States v. Rogers</u>, 972 F.2d 489, 492 (2d Cir. 1992), the Second Circuit stated, before addressing the narrower issue of the availability of departures from career offender classifications, that "[a] district court's authority to depart from the Sentencing Guidelines is statutory and is grounded in the proposition that the Guidelines do not adequately consider a certain aggravating or mitigating factor in assessing a defendant's sentencing range."  The <u>Rogers</u> Court further explained that, "[v]iewed as a whole, the authority to depart provides a 'sensible flexibility' to insure that atypical cases are not shoe-horned into a Guidelines range that is formulated only for typical cases."  <u>Id.</u> at 493.  Despite recurrent and recent legislative efforts to limit this "sensible flexibility," sentencing courts retain their basic duty and authority to tailor sentences in individual cases on the basis of factors, mitigating or aggravating, particular to the individual case.  This

- 5 -

fundamental judicial authority allows sentencing courts to depart from career offender guidelines just as they can from other ill-fitting guidelines, id.,or, under 18 U.S.C. 3553(a), to find that non-Guidelines factors warrant a sentence other than as contemplated by the Guidelines, with or without departure.

In United States v. Mishoe, 241 F.2d 214, 218 (2d Cir. 2001), the Second Circuit stated that career offender departures "are to be made on the basis of individualized consideration of the circumstances of a defendant's case, rather than a general 'rule.'" In Mishoe, the court found error in the sentencing court's apparently categorical special rule that prior convictions for street level narcotics sales support a departure from the career offender guideline. Id. at 218-19. The Mishoe Court went on to explain, however, that

> . . . we believe that the Court would be entitled on remand to consider whether to make a departure on an individualized consideration of factors relevant to whether CHC VI significantly over-represents the seriousness of [the] defendant's criminal history or the likelihood that the defendant will commit further crimes.' U.S.S.G. § 4A1.3. Such factors might include, for example, the amount of drugs involved in Mishoe's prior offenses, his role in those offenses, the sentences previously imposed, and the amount of time previously served compared to the sentencing range called for by placement in CHC VI.

While Mishoe addressed a horizontal departure on the career offender axis, precedent also permits departure downward from the enhanced offense level that results from categorization as a career offender. See United States v. Rivers, 50 F.3d 1126, 1130 (2d Cir. 1995). In this case, the "individualized consideration" required by Mishoe supports a finding that the armed career offender category significantly over-represents the seriousness of Mr. Rivera's criminal history.

Although it has been established on appeal that Mr. Rivera is an armed career offender because his non-violent escape is a statutory crime of violence, in sentencing Mr. Rivera the Court can and should give due consideration to the reality of the non-violence of the qualifying "violent felony." Under the Guidelines in effect at the time of the instant offense, the Court can depart on the offense level axis and the criminal history axis because Mr. Arroyo's criminal history category significantly over-represents the seriousness of his criminal history. U.S.S.G. §4A1.3. Although Mr. Rivera's criminal record places

- 6 -

him in category VI, six of his criminal history points derive from the non-violent escape in 1994 and an equally non-violent failure to appear in 1998. Moreover, the armed career classification inflates his total offense level from 268 to 34 by treating a non-violent offense as a crime of violence. [The Presentence Report originally stated incorrectly that two levels should be added to the base level of twenty-six because of an obliterated serial number; the gun, however, never had a serial number.] The higher offense level in turn raises the sentencing range from 120-150 months to 262-327 months, a leap of over 12 years due solely to Mr. Rivera's non-violent and non-confrontational failure to return from an authorized furlough. This draconian added punishment, on top of the statutory increase from a maximum sentence of 10 years to a minimum sentence of 15 years, was not a factor that was fully taken into consideration by the Commission in formulating the Guidelines. Moreover, the non-violent nature of the requisite "violent felony" supports a finding that the resulting sentencing range far exceeds what is needed for the sentence to bes sufficient but not greater than needed to meet the statutory objectives of sentencing. For these reasons, should the Court should depart downward to total offense level 26 to recognize the reality that treating Mr. Rivera as an armed career offender significantly over-represents the seriousness of his criminal history or, alternatively, the Court should find that the purposes of 18 U.S.C. §3553(a) would be served by a sentence of 15 years imprisonment.

The sentencing guidelines are intended to apply to "heartland" cases, and departure is also appropriate "[w]hen a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm . . . ." U.S.S.G., Introduction and General Application Principles: The Guidelines' Resolution of Major Issues (Policy Statement), (b) Departures. In the typical felon in possession case, a defendant possesses a firearm which he has acquired and possessed for some personal purpose, legal or not, such as self-protection in connection with illicit drug sales. Typically, defendants possess or intend to possess the weapon for some significant period of time. Although temporary possession of only a short duration, even if to store the gun for its owner, violates 18 U.S.C. § 922, a violation of that type, as was proven in this case, is atypical and permits departure below the calculated offense level.

- 7 -

The evidence at trial did not definitively establish who owned the firearm that Mr. Rivera was convicted of possessing and did not establish the duration of his possession of the gun, but the defendant urges the Court to find that, as testified to by defense witnesses, the gun did not belong to Mr. Rivera and he had taken temporary possession for the limited purpose of storing it for the owner. In assessing the "heartland" nature of the possession, it bears note that, despite the testimony of police that they saw Mr. Rivera with the gun when they responded to a reported gang fight (that was not happening when they arrived), the gun was not loaded and no ammunition was recovered. Thus, the gun was not being used in the manner that guns are ordinarily used and a downward departure can and should be granted.

### Conclusion

Jose Rivera is a thirty-seven year old man whose childhood was spent in foster care and juvenile detention instead of in a supportive family and school. As an adult he drifted into a street gang and spent years in prison. Despite the substance abuse, depression and suicidal thoughts that plagued him, Mr. Rivera retains an optimistic view of his future and he has the ability and desire to achieve a productive life in the community.

While in prison in 1994-95 , Mr. Rivera was inspired and guided by a prison teacher, he became an avid reader with a love for Dickens, Shakespeare and Poe, and he became a prolific and published writer. Before his arrest in this case, he was employed and building a positive relationship with his girlfriend. Thus, despite his criminal record and emotional problems that have contributed to his history of legal problems, there is good reason to expect that Mr. Rivera will address these problems and make good use of his positive traits during his lengthy term of imprisonment and after he is released from prison.

Jose Rivera has not made a career of crime, let alone a career of using guns, and the sentence imposed in this case should recognize that the presumptive sentence under the Guidelines for an armed career offender far exceeds what is needed to achieve the statutory objectives of sentencing.

Respectfully submitted,

- 8 -

THE DEFENDANT,
JOSE RIVERA

THOMAS G. DENNIS
FEDERAL DEFENDER


/s/

Dated:  June 15, 2005                    _____
                                         Paul F. Thomas
                                         Asst. Federal Defender
                                         2 Whitney Ave., Suite 300
                                         New Haven, CT 06510
                                         Bar No. ct01724
                                         (203) 498-4200

<u>CERTIFICATION</u>

    I HEREBY CERTIFY that a copy of the foregoing Defendant's Memorandum in Aid of Re-Sentencing has been mailed to Eric Glover, Assistant United States Attorney, P.O. Box 1824, New Haven, CT 06508, on this 15 day of June 2005.


/s/

_____
Paul F. Thomas